## BRADLEY *v.* UNITED STATES.

A. and the Postmaster-General executed an indenture, whereby the former leased to the United States, for the use of the Post-office Department, at an annual rent of $4,200, payable quarterly, a building in Washington, for three years from and after June 5, 1873, with the privilege of renewing the term for the further period of two years. It was thereby " understood and agreed " by the parties that the indenture was made subject to an appropriation by Congress for the payment of the stipulated rent, and that no payment should be made to A. on account thereof until such appropriation should be available, when the arrears then due would be paid in full, and thereafter the payments be made at the time and in the manner stipulated. Congress made the requisite appropriations to pay the specified rent to the end of the second year of the term. By the act of March 3, 1875 (18 Stat. 367), making appropriations for the fiscal year ending June 30, 1876, Congress appropriated for the rent $1,800, with a proviso " that the above sum shall not be deemed to be paid on account of any lease for years of said building: *Provided, however*, that at the end of the present fiscal year the Postmaster-General be directed, upon the demand of the lessor, to deliver up the possession of said premises." No such demand by the lessor was made. A. having received no rent for the third year, sued the United States therefor, and claimed $4,200. *Held*, 1. That the parties to the indenture, by their expressed understanding and agreement, intended to incorporate into the instrument the substance of the act of Congress which prohibits any department from "involving the government in any contract for the future payment of money in excess of the appropriations." 2. That the appropriations for two years of the term were not such a recognition by Congress of the validity of the contract as bound the United States to pay the stipulated rent for the third year. 3. That by the said proviso A. had seasonable notice that no more than $1,800 would be paid to him as rent for the third year, and that he, not having demanded the possession of the premises, must be held to have assented to the terms offered by said act.

APPEAL from the Court of Claims.

This was an action by Andrew C. Bradley for the use of George Taylor, Samuel Cross, and Peter F. Bacon, trustees, to recover the sum of $4,200 rent claimed to be due from the United States for the premises No. 915 E Street, in the city of Washington, for the fiscal year ending June 30, 1876.

The court below found the following facts: —

1. On the 6th of June, 1873, the Postmaster-General and the claimant, Bradley, made and executed an indenture, of which the following is a copy: —

"This indenture, made this sixth day of June, in the year one thousand eight hundred and seventy-three, by and between Andrew C. Bradley, of Washington, D. C., of the first part, and John A. J. Creswell, Postmaster-General, for and in behalf of the United States of America, of the second part, witnesseth: That the said party of the first part, for and in consideration of the rents, covenants, and agreements to be paid, kept, and performed by the party of the second part, doth hereby demise and lease unto the said party of the second part, those certain premises, with the four-story brick house and brick stable thereon, situated on the north side of E Street, between 9th and 10th Streets, in the city of Washington, in the District of Columbia, and known as house numbered 915 on said E Street northwest, to have and to hold to the party of the second part, for the term of three years from and after the fifth day of June, Anno Domini one thousand eight hundred and seventy-three, with the privilege to the said party of the second part of a renewal of the said term for the further period of two years.

"The said party of the second part yielding and paying therefor the annual rent, during the said term and a subsequent renewal thereof, as aforesaid, of four thousand two hundred dollars ($4,200), payable quarterly, on the thirtieth day of September, the thirty-first day of December, the thirty-first day of March, and the thirtieth day of June.

"And it is hereby mutually understood and agreed, by and between the parties hereto, that this lease is made subject to an appropriation by Congress for the payment of the rental herein stipulated for, and that no payment shall be made to said party of the first part on account of such rental until such appropri-

ation shall be available, and that as soon as practicable after such appropriation shall become available the arrears of the rent then due shall be paid in full, and thereafter payment shall be made at the times and in the manner hereinbefore stipulated.

" And it is hereby agreed by said party of the first part that he will, at his own expense, remove such partitions and construct such partitions, with necessary doorways and doors, in said building, and construct such water-closets, with the necessary water connections, as may be required by the supervising architect of the Treasury Department, and that he will leave in good order all gas-fixtures now in said building for the use of the said party of the second part; and the party of the second part will keep the said premises in good repair during the continuance of this lease and any renewed term thereof, and the expenses of any alterations of or additions to the interior, not herein otherwise provided for, so as to adapt it to the use of the United States, and not calculated to damage the premises, are to be borne by the party of the second part, and all taxes and assessments legally levied or charged upon the property are to be paid by the party of the first part.

" And it is hereby further provided that in case the premises, or any part thereof, during said term, or the renewal thereof, be destroyed or injured by fire or other unavoidable casualty, so that the same shall be thereby rendered unfit for use, then the rent hereinbefore reserved, or a just and proportionable part thereof, according to the extent and nature of the injury sustained, shall be suspended or abated until the said premises shall have been put in proper condition for use by and at the expense of the said party of the first part; and the said party of the second part covenants to deliver up the said premises to the party of the first part at the determination of this lease, or at the end of any renewal of the term thereof, in good order and condition, reasonable wear and use thereof and injury by unavoidable fire or other casualty excepted.

" And it is further stipulated that the party of the second part may, at or before the delivery of the premises aforesaid, remove such additions to or improvements of the same, placed on the premises by the said party of the second part, the removal of which, as aforesaid, will not injure the premises, as he, the said party of the second part, may elect so to do.

"In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.

"A. C. BRADLEY.          [SEAL.]

"JNO. A. J. CRESWELL,  [SEAL.]

"*Postmaster-General.*

"Signed, sealed, and delivered ⎰ T. A. SPENCE.
　　in presence of　　　　⎱ A. G. MILLS."

2. The premises described in said indenture were sold and conveyed, and the lease was assigned, by said Bradley to Alexander R. Shepherd, and by him conveyed and assigned to George Taylor, Samuel Cross, and Peter F. Bacon, as alleged in the petition and in the amendment thereof.

3. Said premises were used and occupied for the uses and purposes of the Post-Office Department, and for the benefit of the United States, under the direction of the Postmaster-General, from the time of executing said indenture until and including June 30, 1876, as well as subsequently thereto.

4. The claimants have been paid the rent of said premises, through special appropriations of Congress, up to and including June 30, 1875, but have been paid nothing for the year ending June 30, 1876.

5. It does not appear that demand has ever been made upon the Postmaster-General on the part of the claimants for delivery up of the possession of the premises.

On the foregoing facts, and the statutes in relation thereto, the court concluded as matter of law that the claimants were entitled to recover the sum of $1,800. Judgment having been rendered for that amount, the claimants appealed to this court.

When the indenture was executed, two statutes were in force.

"No contract or purchase shall hereafter be made, unless the same be authorized by law, or be under an appropriation adequate to its fulfilment, except in the War and Navy Departments, for clothing, subsistence, forage, fuel, quarters, or transportation, which, however, shall not exceed the necessities of the current year." Act of March 2, 1861, sect. 10, 12 Stat. 220; Rev. Stat., sect. 3732.

"It shall not be lawful for any department of the government to expend in any one fiscal year any sum in excess of appropriations made by Congress for that fiscal year, or to involve the government

in any contract for the future payment of money in excess of such appropriations." Act of July 12, 1870, sect. 7, 16 Stat. 251 ; Rev. Stat., sect. 3679.

The deficiency bill for the fiscal years ending June 30, 1873 and 1874, contained the following provision : —

"For rent of house numbered nine hundred and fifteen E Street northwest, for further accommodation of the clerical force of the department, from June sixth, eighteen hundred and seventy-three, to June thirtieth, eighteen hundred and seventy-four, four thousand four hundred and eighty-eight dollars and eighty-six cents, and hereafter no contract shall be made for the rent of any building, or part of any building in Washington, not now in use by the government, to be used for the purposes of the government, until an appropriation therefor shall have been made in terms by Congress." 18 Stat. 144.

The act making appropriations for the legislative, executive, and judicial expenses of the government for the year ending June 30, 1875, appropriated $4,200 "for rent of house numbered nine hundred and fifteen E Street northwest." Id. 107.

The act of March 3, 1875 (id. 367), making appropriations for the fiscal year ending June 30, 1876, contains the following : —

"For rent of house numbered nine hundred and fifteen E Street northwest, eighteen hundred dollars: *Provided*, that the above sum shall not be deemed to be paid on account of any lease for years of said building: *Provided, however*, that at the end of the present fiscal year the Postmaster-General be directed, upon the demand of the lessor, to deliver up the possession of said premises."

*Mr. J. Hubley Ashton* and *Mr. Nathaniel Wilson* for the appellants.

The construction given by the Court of Claims to that clause of the lease which provides for the payment of the rent violates the settled rules of interpretation applicable to contracts and to the relations of landlord and tenant, and is wholly inconsistent with the intention of the parties as expressed in the other provisions of the indenture. It attributes to the lessor the manifestly irrational purpose and intent of giving the possession of his property for five years, while he in the mean time was to keep it in good repair and make extensive improvements, and was to accept whatever rent the tenant might think proper to pay.

It is equally incredible that the parties should have intended to agree, and to put in writing an agreement, to submit to Congress " the right to make or refuse appropriations."

Such a construction destroys the lease, with all its covenants, save those which are for the advantage of the lessee, and is inconsistent not only with its general conditions, but with the obvious meaning of other provisions in the same clause which is relied upon to exempt the tenant from liability. The provision for regular quarterly payments after " an appropriation " is wholly irreconcilable with the theory that the lessor intended to leave the time as well as the amount of payment to the arbitrary determination of the tenant.

The clause under consideration was inserted for the purpose of designating the method and source of payment, and not of making the legal rights and relations of the parties dependent upon any future contingent event.

If, however, this court shall be of opinion that the agreement contemplated that such rights and relations, as well as the mode of payment, were to be determined by Congress, then the recognition of the binding obligation of the contract was to be manifested by an appropriation, which, when once made, was an acceptance of the lease, thereby validating it for the entire term, and entitling the lessor to the stipulated rent.

Apart from and independently of the expressed intention of the parties, it is apparent that Congress considered that the lease was presented as a conditional contract for a term of years, to be approved or disapproved. That body obviously intended that its action should be construed to be, and it by implication was, an acceptance and ratification of the lease for the whole term. If Congress had not so intended, it would not have provided in such specific terms for the payment of rent, nor declared that thereafter, except as to buildings then in use in Washington, no contract should be entered into until an appropriation had been made ; but, as a subsequent Congress did, would have appropriated the requisite money without reference to the term, with a proviso that the same should not be deemed to be paid on account of any lease for years.

While it may be admitted that, where the United States is a principal, acts and omissions which would create a presumption of ratification in the case of an individual will create no presumption against it, the action of Congress, when fully cognizant of all the facts, in accepting the benefits of a contract, has the same legal significance and consequences as the similar action of an individual. *Fremont* v. *United States*, 2 Nott & H. 461; Story, Agency (8th ed.), sect. 239; *Mc-Cauley* v. *Brooks*, 16 Cal. 1; *Roberts et al.* v. *United States*, 92 U. S. 41.

A ratification once deliberately made, upon a full knowledge of all the material circumstances, becomes *eo instanti* obligatory, and cannot afterwards be revoked or recalled. Wharton, Commentaries on Agency, sects. 72, 73.

If it should be held that the action of Congress did not ratify the contract and validate the lease for the entire term, it must be admitted that it did validate it for the first and second years; and as the government entered the premises and maintained possession under the lease, it is liable for the stipulated rent for the third year.

A tenant holding over after the expiration of his lease, with the consent of the landlord, becomes a tenant from year to year, subject to the terms and conditions of the original lease. Taylor, Landlord and Tenant, sect. 22; *Kingler* v. *United States*, 4 Nott & H. 407; *Baker* v. *Root*, 4 McLean, 572.

A lease for years, though void as to the term, is good for one year if the lessee enters, and the tenancy thereafter becomes a tenancy from year to year.

A lease void under the Statute of Frauds, for want of authority of the agent who executed it, will regulate the rights of the parties during the actual existence of the tenancy. Taylor, Landlord and Tenant, sect. 26; *Porter* v. *Bleiler*, 17 Barb. (N. Y.) 140.

The rights and liabilities of the parties are to be measured and determined by the lease under which possession was obtained, and neither party can change the terms of the tenancy without the assent of the other.

Furthermore, if the lease was void, and not subsequently

validated, the government, having entered upon and occupied the premises, is to be deemed as having entered under an implied lease, and is bound to make a fair and reasonable compensation for the rent or the use and occupation of the premises.

It has been held by this court that, in the absence of an express contract, or when the express contract is void, the government is liable for the value of the property which it has received and used. *Salomon* v. *United States*, 19 Wall. 17 ; *United States* v. *Gill*, 20 id. 517.

*The Solicitor-General, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Leases, like deeds or other written instruments, must receive a reasonable construction, as derived from the language employed, without the aid of extrinsic evidence beyond what may be necessary to identify the premises and to disclose the circumstances surrounding the transaction when the instrument was executed. *Quackenboss* v. *Lansing*, 6 Johns. (N. Y.) 49 ; Taylor, Landlord and Tenant, sect. 160, note.

Sufficient appears from the findings of the court below to show that, on the 6th of June, 1873, an indenture of lease was executed by the appellant to the United States, whereby the former, in consideration of the rents, covenants, and agreements in the instrument specified, demised and leased to the United States the premises described in the petition for the term of three years from and after June 5, 1873, with the privileges to the lessees of a renewal of the term for the further period of two years, at and for the annual rent, during the said term and subsequent renewal thereof, of $4,200, payable quarterly on the days specified in the indenture of lease exhibited in the record.

Both sides concede what the lease and record show, that the premises were leased by the United States for the convenience of the Post-Office Department, and that the Postmaster-General took immediate possession of the same, and that the premises have ever since been used for the purposes of his department.

Four other findings of the court below should be noticed in this connection : 1. That the lessor sold and conveyed the

premises to Alexander R. Shepherd and assigned the lease to him, and that he, the assignee, conveyed and assigned the same to the other persons named in the petition. 2. That the premises were used by the United States for the purposes mentioned for the whole period alleged. 3. That the holders of the lease have been paid the whole rent, except for the last year, for which they have been paid nothing. 4. Adequate appropriations were made by Congress authorizing the payments which have been made, but Congress refused to appropriate more than $1,800 for the last year.

Pursuant to those findings, the court below held that the plaintiffs could only recover the sum appropriated,. and rendered judgment in their favor for that amount, from which judgment the plaintiffs appealed to this court. Since the appeal was entered here, the appellants assign for error that the court below erred in the construction given to the indenture of lease, and to the two acts of Congress referred to in the findings of fact.

Due appropriation of the sum of $1,800 was made by Congress to pay the rental for the last year; and the court below rendered judgment in favor of the appellants for that sum, which exhausts the appropriation made by Congress for that purpose, the only question for decision being whether the appellants can recover in this case the balance of their claim which has never been appropriated by Congress.

Moneys not appropriated cannot be drawn from the treasury; and it is equally clear that the parties, by the terms of the lease, understood and agreed with each other that the lease was made subject to an appropriation by Congress for the payment of the stipulated rental, and "that no payment shall be made" to the lessor "on account of such rental until such an appropriation shall become available;" that as soon as practicable after such an appropriation shall become available, the arrears of rent then due shall be 'paid in full, and that payment thereafter shall be made at the times and in the manner stipulated in the indenture of lease.

Prior to that time, Congress had enacted that it shall not be lawful for any department of the government to expend in any one fiscal year any sum in excess of the appropriation made by

Congress for that fiscal year, or to involve the government in any contract for the future payment of money in excess of such appropriation; and both parties concur in the proposition that that provision was in full force and operation at the time the indenture of lease under consideration was executed.    16 Stat. 231; Rev. Stat., sect. 3679.

. Such contracts or purchases for the future were forbidden by the act of the 2d of March, 1861, unless the same were authorized by law or were made under an appropriation adequate to their fulfilment, except for clothing, subsistence, forage, fuel, quarters, or transportation, in the War or Navy Department; nor could those departments make any such contracts, even for those purposes, beyond the necessities of the current year. 12 Stat. 220; Rev. Stat., sect. 3732.

Forty years earlier, Congress enacted that neither the Secretary of State, or of the Treasury, or of War or Navy Department, should thereafter make any contract other than such as were necessary for the subsistence and clothing of the army and navy, and contracts for the quartermaster's department, except under a law authorizing the same, or under an appropriation adequate to its fulfilment.    3 Stat. 768.

Congress passed an act directing the Secretary of the Navy to cause floating dry-docks to be constructed at three of the national navy-yards, and specified appropriations were made towards constructing the several docks.    Proper measures were adopted by the Secretary to ascertain what each structure would cost, from which it appeared that the appropriation for each was greatly insufficient.    In view of these facts, the Secretary doubted whether he could lawfully contract to have the work done, and submitted the question to the Attorney-General, who decided that the facts as stated brought the case directly within the prohibition of the act last named, and that the contracts could not lawfully be made.    4 Op. Att'y-Gen. 600.

Cases arise, as there stated, where the authority to contract for the work is expressly given in the appropriation act, and in such cases it is clear, as there admitted, that the power to contract exists even though the price to be paid exceeds the amount appropriated.    Examples of the kind are given in that

opinion, to which many more might be added; but when no such authority is given, and nothing is contained in the act appropriating the money from which such an authority may be implied, it is clear that the head of the department cannot involve the government in an obligation to pay any thing in excess of the appropriation.

Argument to show that money cannot be drawn from the treasury before it is appropriated is unnecessary, as the Constitution provides that "no money shall be drawn from the treasury but in consequence of an appropriation made by law ; " nor is it necessary to enter into much discussion to show that the act of Congress making it unlawful for the head of a department to involve the government in any contract for the future payment of money in excess of an appropriation is a valid act, and of binding obligation, as such regulations and prohibitions in one form or another have been in operation without question throughout nearly the whole period since the adoption of the Constitution.

Acts of Congress of the kind, it must be admitted, are both valid and salutary in their operation ; and it is equally clear that the party who drafted the indenture of lease intended to incorporate into the instrument the substance of the provision which prohibits the head of a department from involving the government in any contract for the future payment of money in excess of the appropriation made for its fulfilment. Well-founded doubt upon that subject cannot be entertained, and the court is of the opinion that the words of the indenture are amply sufficient to effect the object which the person who drafted the instrument intended to accomplish.

Both parties agreed that the indenture was subject to an appropriation to be made by Congress for the payment of the rental, and that no payment should be made to the lessor on account of such rental until such an appropriation should become available. Concede that these stipulations are valid, of which there can be no doubt, and it is clear to a demonstration that the claim of the appellants in excess of the amount allowed by the court below is utterly groundless.

Even suppose that is so, still it is insisted by the appellants that Congress, by subsequent legislation, has committed the

United States to the annual payment of the stipulated rental for the whole term of three years specified in the indenture of lease, and that they are entitled to judgment for the entire rental of the third year which remained unpaid when the suit was commenced, irrespective of the fact that the judgment rendered in their favor by the court below exhausts the whole amount of the money appropriated by Congress for that purpose.

Two annual appropriations were made by Congress, which in the aggregate were sufficient to pay the stipulated rental of the premises for the first two years ; and the findings of the court below show that the payments for those two years were duly made, and that nothing more is claimed by the appellants in that regard.   Of these, the first was simply an appropriation of the amount required to pay the stipulated annual rental, without any explanation whatever beyond what was necessary to describe the premises leased, from which it is plain that nothing can be inferred from that act to support the theory of the appellants.   18 Stat. 107.

Annexed to the second appropriation, which is for the sum of $4,488.86, is the following proviso, to wit: that hereafter no contract shall be made for the rent of any building, or part of any building in Washington, not now in use by the government, to be used for the purposes of the government, until an appropriation therefor shall have been made in terms by Congress.   Id. 144.

Specific appropriations by these two acts were made available to pay the rental of the premises leased for the first two years; but it is clear as any thing in legal decision can be, that they furnish no ground whatever to support the theory that Congress entered into any legal obligation to make such an appropriation for the third year.   Instead of that, the inference, if any, to be drawn from the last act tends to negative the appellants' theory, and to show that Congress intended to adhere to the stipulations of the lease, — that it was made subject to an appropriation by Congress for the payment of the rental stipulated, and that no payment should be made to the lessor on account of such rental until such an appropriation should become available.

Unsupported as that theory is by those two appropriation acts, or by any thing else exhibited in the record, it may well be dismissed as destitute of merit, without further consideration.

If the indenture of lease had been for three years without any covenant that it was made subject to an appropriation by Congress, and that no payment on account of rental should be made until such an appropriation became available, it may be that the theory of the appellants, that the contract was for three years as an entire term, might be maintained ; or if not, that it might perhaps be held that Congress had ratified the instrument by appropriating money to pay the rental for the first two years.   Be that as it may, it is still true that no ratification of the present indenture by any such act would benefit the appellants in that regard, so long as it contains the covenant that no payment of the rental shall be made until an appropriation for the purpose becomes available.

Viewed in that light, as the case should be, a few observations will be sufficient to show that nothing is found in the remaining appropriation act to warrant a judgment in favor of the appellants for any sum beyond what was allowed by the court below.

Eighteen hundred dollars were appropriated by Congress for the third year, several months before the second year expired. Appended to that appropriation is the proviso that the above sum shall not be deemed to be paid on account of any lease for years of said building, which shows conclusively that Congress intended to negative the theory of the appellants that the indenture gave them the right to recover any thing of the United States beyond the sum appropriated by Congress.

Confirmation of that proposition is also derived from a second proviso annexed to the same appropriation, by which it is enacted that at the end of the present fiscal year the Postmaster-General be directed, upon demand of the lessor, to deliver up the possession of the said premises.   Id. 367.

Construed as those provisions should be, in view of the subject-matter and the surrounding circumstances, it is clear that Congress intended to give seasonable notice to the lessor of the premises that no more than the sum appropriated would be paid as rental of the same for the third year, and that he might

take possession of the same if he did not see fit to accept the sum appropriated for their use and occupation.

Corresponding views were expressed by the court below, and they held, and well held, that inasmuch as the appellants never demanded the redelivery of the premises, it must be determined that they acquiesced in and assented to the terms of rent offered by Congress for the third year.

Public officers, in such a case, having no funds in the treasury and being without authority to bind the United States, can only agree to pay the stipulated rental, provided the money is appropriated by Congress, and if the lessor, voluntarily and without any misrepresentation or deception, enters into a lease on those terms, he must rely upon the justice of Congress; nor do the circumstances in this case disclose any hardship, as the appellants were seasonably notified that they would not be paid for the third year any greater rent than the sum appropriated for the purpose.    *Churchward* v. *The Queen,* Law Rep. 1 Q. B. 199.

For these reasons the court is of the opinion that there is no error in the record.

                                        *Judgment affirmed.*


MR. JUSTICE MILLER, with whom concurred MR. JUSTICE FIELD, MR. JUSTICE STRONG, and MR. JUSTICE HARLAN, dissenting.

I am of opinion that the two annual appropriations expressly for the sum due for each year's rent, according to the terms of the lease, were recognitions of the validity of that contract which bind the United States, and that the claimant was entitled to recover the same amount for the third year.