Kici-iardson, J.,
delivered the opinion of the court:
The claimant was chief justice of the Territory of "Wyoming from February 14, 1876, to November 26,1879.
By Be vised Statutes, section 1879, the annual salary of the .chief justice and associate justices of all the Territories was fixed at $3,000 each.
The claimant was paid his salary at the rate of $3,000 a year up to and including June 30, 1877, the end of the fiscal year.
The Act March 3, 1877 (19 Stat. L., 294), chap. 102, making appropriations for the legislative, executive, andjudicial expenses of the government for the year ending June 30, 1878, provided:
“ That the following sums be, and the same are hereby, appropriated, out of any money in the Treasury not otherwise appropriated, in full compensation for the service of the fiscal year ending June thirtieth, eighteen hundred and seventy eight, for the objects hereinafter expressed:
#######
“GOVERNMENT OE THE TERRITORIES.
ft ft ft ft ft ft ft
“ Territory of "Wyoming. — For salaries of governer, chief justice, and to associate judges, at two thousand six hundred dollars each. ” * * * (19 Stat. L., 309.)
The Act June 19, 1878 (20 Stat. L., 178, 194), chap. 329, making appropriations for the fiscal year ending June 30, 1879, contained the same provisions in the same language; and the Act June 21, 1879 (21 Stat. L., 223), chap. 34, re-enacted that act, with “ the same provisions relating thereto,” for the fiscal year ending June 30, 1880.
*327 With the exception of the words “ in full compensation, ” these acts begin with substantially the same formula used in all other •appropriation acts of every description since the foundation of the government. These words were first introduced by the Forty-fourth Congress into the legislative, executive, and judicial appropriation act of March 3, 1877, before cited. The House of Kepresentatives of the same Congress altered its rules so as to make it in order to incorporate into any appropriation bill such provisions or amendments “ as, being germane to the subject-matter of the bill, shall reduce expenditures,” and that rule, changed only in form, has over since continued.
The struggle in the House of Representatives of the Forty-fourth and subsequent Congresses over the proposition to incorporate that provisions into the rules of the House is historic. It cannot be disregarded in seeking to find the intention of those Congresses in departing from the otherwise uniform formula and inserting in the legislative, executive, and judicial ap - propriation acts, in which so many salaries are provided for, the important and significant words “ in full compensation.”
In Blake v. National Banks, 23 Wall., 317, the Supreme Court, in their opinion, examine and cite extensively the proceedings of the Senate and of the House of Representatives, the amendments offered and accepted or rejected, and the points of difference between the two Houses, in order to explain the meaning of the language finally agreed upon in the act then under consideration, and to determine the intention of Congress as therein expressed.
The words “in full compensation” have a clear, distinct, and well understood signification, and cannot be overlooked or argued out of the statute. They must be allowed their full force and effect.
“The good expositor,” says Lord Coke, “makes every sentence have its operation to suppress all the mischief; he gives effect to every word in the statute; he does not construe it so that anything should be vain and superfluous, nor yet makes •exposition against express words.” (Dwarris on Statutes, 577.)
In Bowen’s Case (14 C. Cls. R., 173, affirmed on appeal, 100 U. S., 508), this court held that the introduction into a section of the Revised Statutes of the single word “ such,” which was not in the original act there revised and re-enacted, completely changed the law, and that decision was affirmed by the Supreme Court.
*328 There is no ambiguity in the language of the acts now under consideration. We are not driven, therefore, to resort to any refinement of reasoning or technical rules of interpretation in order to establish, by judicial construction, what an expression in itself of doubtful signification should be held to-rnean.
The Act June 19, 1878 (20 Stat. L., 206), chap. 329, appropriating an amount for the claimant’s salary, “in full compensation,” for the year ending June 30, 1879, contained this provision:
u Sec. 3. That all acts or parts of acts inconsistent or in conflict with the provisions of this act are hereby repealed.”
This section was re-enacted by the Act June 21, 1879 (Stat. L., 23), chap. 34, appropriating a like amount in full compensation for the year ending June 30, 1880.
Without that repealing section, which was not in the earlier act of 1877, the intention of Congress was equally clear. A general repealing clause like this, expressly repealing all inconsistent -provisions of previous statutes, often introduced at the close of the legislative enactments, is not necessary to give effect to the otherwise expressed intention of the legislature. It may intensify or emphasize that intention, but it is not required to give it force and effect.
In seeking to ascertain the meaning of a statute, it is the will of the legislature "which must be determined ; and the latest will of the latest legislature must control all previous enactments wherever they come in conflict, whether words of express repeal be used or not. Leges posteriores priores contrarias abrogant. (Wilcox Case, 12 C. Cls. R., 495, affirmed on appeal, 95 U. S., 661; Farden’s Case, 13 C. Cls. R., 347, affirmed on appeal, 90 U. S., 10; United States v. Freeman, 3 How., 565.) This is the controlling xirinciple upon which all rules of construction are founded.
Legislatures are not bound to use any set or particular formula in the enactment of laws. Language which has a distinct meaning, however awkwardly inserted in a statute, must be held to express the legislative will as fully as though it were introduced in the most artistic manner.
There is no doubt that the words “ in full compensation ” ivere introduced into these appropriation acts for the very purpose of reducing, for the respective years for which the appro *329 priations were made, the compensation of tliose officers for whom the appropriations were less tlian the salaries established by previous laws.
They were inserted as a compromise between those who favored a permanent reduction of salaries and those who opposed any reduction. A temporary reduction was ¡finally agreed upon in this form.
With the expediency or inexpediency of the policy of Congress in thus reducing salaries temporarily, by provisions in annual appropriation acts, we have no concern. However objectionable such a course may seem to others, it is within the constitutional power of Congress, and must be respected and obeyed and not circumvented or evaded by the courts.
With some exceptions, Congress may at any time make alterations of the salaries of public officers, to take effect from the passage of the act. The only contract which arises upon a statute establishing a salary is to pay the incumbent of the office that salary while the law remains in force and unchanged. When the statute is repealed, superseded, or amended so as to-alter, the amount of the salary for the time being, the contract from that time forward is correspondingly changed. (Patten's Case, 7 C. Cls. R., 362; Butler et al. v. Penn. 10 How., 402; Territory v. Pyle, 1 Oreg. 151; Koontz v. Franklin, 76 Penn., 156.)
The Constitutional exceptions and limitations are, that the compensation of the President shall neither be increased nor diminished during the period for which he shall have been elected (Con., Art. II, § 1), and that the judges, both of the Supreme and inferior courts, shall receive for their services a compensation which shall not be diminished during their continuance in office (Con., Art. III, § 1).
That Territorial courts are not “ inferior courts” within the meaning of the Constitution has been authoritatively determined. (Bonner et al. v. Porter, 9 How., 235; Clinton v. Englebrecht, 13 Wall., 447; Good v. Martin, 95 U. S., 98.)
Congress, therefore, had the power to reduce the claimant’s-salary either permanently or temporarily. For the fiscal years ending June 30,1878, 1879, and 1880, they fixed his pay at $2,600 a year, in full compensation for his services; and this they did before he had .entered upon his duties for those years. He thus had notice in advance of what his salary was to be, *330 and by continuing in office thereafter he contracted to 'accept it on the terms of the statute.*
We give no force to the fact that the claimant received the reduced rate without objection. He was entitled to the compensation which the law attached to his office, and the defend.ant’s liability could not be discharged by paying a less sum, even though he had. executed a receipt in full. (Baldwin’s Case, ante, p. 297.) We hold, as before stated, that the claimant’s salary was reduced for the time being, and that he has been paid all he is entitled to receive.
A .majority of the court are of opinion that the claimant’s petition should be dismissed.
The question involved in the case is an important one. There are many iiublic officers whose rights may be affected by its determination, and no one of them has a claim large enough to entitle him to appeal from an adverse decision of this court. In order that the case may be taken to the Supreme Court, where the law may be finally settled by the tribunal of last resort, the Attorney-General consents to the entry of a fro forma judgment for the claimant. This brings the case within the rules which we laid down in Bradshaw’s Case (14 C. Cls. R., 145) in relation to pro forma judgments.
The claimant will, therefore, have a pro forma judgment in his favor for the sum of $862.22. In this we are all agreed.

 In the case of Embry v. The United States (100 U. S. R., 680), decided by the Supreme Court on the same day that this opinion was delivered, the Chief Justicesays: “ The question here presented is not one of office, butof salary. Wherever the power of removal from office may rest, all agree that Congress has full control of salaries, except those of the President and the judges of the courts of the United States. The amount fixed at any time may bo added to or taken from at will. No officer except the President or a judge of a court of the United States can claim a contract right to any particular amount of unearned compensation. If an officer is not satisfied with what the law gives him for his services, he may resign.”