Nott, J.,
delivered the opinion of the court:
In 1870, Congress established the Department of Justice, and directed the superintendent of the Treasury building to provide *26 rooms for tbe new department. With tbe approval and co-operation of tbe bead of tbe department, tbe Attorney-General, tbe superintendent rented for that purpose a portion of tbe building known as tbe Freedman’s Bank. Tbe rent reserved by tbe lease under wbicb tbe government entered, and by virtue of wbicb it continues to bold, was duly appropriated by Congress in full up to the 30th June, 1874; but from tbe 1st of July, 1874, to tbe present time tbe stipulated rent has not been paid in full, and this action is brought to recover tbe balance or deficit remaining unpaid.
We have frequently bad occasion, when looking for analogies by which to ascertain tbe legal rights of claimants and liabilities of tbe government, to treat Congress as tbe principal and tbe executive officers as tbe agent. And if this were an action against an ordinary principal, not a shadow of doubt could arise in any court as to bis liability upon this lease. But tbe legislative branch of tbe government is not an ordinary principal, and is not in all cases chargeable with knowledge of tbe acts of its agents, and tbe questions wbicb lie at tbe bottom of this case are, whether tbe agent bad authority to bind tbe government by tbe execution of tbe lease; or whether bis act, if without such authority, has been ratified by bis principal, wbicb here is Congress?
The authority under wbich the executive officers acted is to be found in the Act to establish the Department of Justice, 22d June, 1870 (16 Stat. L., 162, ch. 150, § 13), and the Legislative Appropriation Act, 1871. (Ibid., 475-494, ch. 113.) By the former statute tbe superintendent of the Treasury building was directed to provide suitable rooms in that building for tbe officers and clerks of the department; or, if that should be found impracticable, "to provide such rooms in some other building in the vicinity of said Treasury.” By the latter statute Congress appropriated "For rent of building, ten thousand dollars.”
This authority to tbe superintendent of tbe Treasury was exceedingly vague. It authorized him to do nothing but procure suitable rooms; it limited him in nothing but that they should be in the vicinity of tbe Treasury. On tbe one band a great department of the government is not a transient or trivial board or commission to be provided for temporarily by tbe month or tbe year; on tbe other band tbe superintendent was not authorized to provide for it permanently. In this dilemma be did pre *27 cisely wbat he should have done, and exactly all that he could properly have done. He selected suitable rooms in the vicinity of the Treasury at an annual rent of $15,000 for the term of one year, with the right reserved to the government of continuing the occupancy for a term of ten years, with the further right reserved to the government of terminating the lease by notice at the expiration of any year of the term. It is manifest that the obligation of these covenants was all on one side; that the tenant had a double option where the landlord had none; that the lessor was bound for ten years, and the lessee for only one. In other words, the agent, by a highly judicious exercise of his discretion, cast a positive obligation upon his principal for only one year, and left his principal frée to extend the lease for one year into a lease for a term of years, or to terminate the holding at the end of the first year. It is manifest that such an exercise of his discretion by an agent involves no strain of his authority; and that if a principal thus circumstanced should continue to hold and occupy the leased premises after the expiration of the first year, the holding under the extended term of the lease would be his act and not his agent’s.
What was the action of the principal in this easel
Before the first year of the lease had expired, Congress, by the Legislative Appropriation Act, 1872 (17 Stat. L., 61-82, ch. 140), appropriated "For rent of building, fifteen thousand dollars,” the precise amount reserved in the lease, and gave no direction and took no step toward procuring another building for the Department of Justice, nor for terminating the existing occupancy. Furthermore, in December, 1872, the Attorney-General addressed an official communication to the Committee on Appropriations of the House of Representatives, setting forth the necessity of the department’s occupying an additional floor of the same building, at a rent of $2,000 a year, and requesting an appropriation of $1,000 in a pending deficiency bill to pay for the occupancy during the current fiscal year. Congress accordingly, by the Deficiency Act, 3d March, 1873 (17 Stat. L., 530-541, ch. 228), appropriated "For rent of the fifth story of the building occupied by the Department of Justice, from January 1 to June 30, 1873, two thousand dollars.” Furthermore, at the same session, Congress, by the Legislative Appropriation Act, 1873 (ib., 485-508, ch. 226), recognized the augmented rent of the two leases for the ensuing fiscal year, *28 and appropriated for both one sum in gross, viz, "For rent of building, seventeen thousand dollars.” Under tbe assumed authority of tbe appropriation acts, a lease for tbe fifth floor was executed similar in terms to tbe first; and under these two-leases, tbe government has ever since occupied and enjoyed tbe demised premises.
Now, it is not to be assumed that tbe legislative' branch of tbe government is chargeable with knowledge of tbe details of the executive business. It cannot be safely maintained that. Congress are chargeable with knowledge of tbe fact that a certain building is used for government purposes by subordinate • officers and clerks, or that when 'Congress appropriate for rents of buildings in gross, they, as a legislative body, are presumed to know tbe terms and conditions of every lease made by every executive officer; but there are some things of which the legislative branch must be presumed to have actual knowledge.. Congress must be presumed to know, and every member actually does know, that the chief executive departments of the government occupy certain buildings; that the .Department of Justice has its specific quarters, and that they are in a leased, building. When, moreover, Congress make a specific appropriation for the rent of a building thus occupied by an executive department, it is likewise manifest that Congress must be presumed to have actual knowledge of the terms and conditions of the lease for which they appropriate the rent.
In a word, the characteristics of this case are threefold: 1st.. An express authority by Congress to procure a building for a specific purpose. 2d. Actual and constructive knowledge that a building has been procured for that purpose, viz, the official headquarters of one of the executive departments. 3d. A series, of appropriations of the precise rent reserved in the leases under-which the government entered upon the premises. This combination of circumstances makes the case as clearly one of legislative ratification as it can be, short of a statute employing express words of approval, and brings it within the principle recognized in Grisar v. McDowell (6 Wall., 381), where it is said, “The action of the President in making the reservation in question was indirectly approved by the legislation of Congress in appropriating moneys for the construction of fortifications and other public works upon them.”
But if this were not the fact; if the leases under which the- *29 defendants entered were to be beld valid for but a single year, •or if tliey by their own terms bad expired at the expiration of tbe first year, in wbat manner would that condition of things affect'this case?
It is a familiar principle of landlord and tenant law, that a lessee holding over continues to hold upon the terms and conditions of the express lease, and to be liable as before for the rent reserved — unless some new condition of things should arise which would imply a new tenancy at a different or reduced rent. Is there any such new condition of things here “2
In the first place, there are no receipts in full, and, on the contrary, the landlord here has uniformly given for every payment of the reduced rent a receipt on account.
In the second place, there has been no arbitration, or quasi arbitration, or reference of a disputed demand to a commission which would take the case within the decision of the Supreme Court in Justice's Case (14 Wall., 535).
In the third place, the only thing which has occurred, it being moreover the only thing which occasions this litigation, is a simple failure of Congress to appropriate the full amount of the rent; and of this action of Congress two things 'are to be observed:
First. The appropriation of a less amount for the rent of the building than the rent reserved by the leases is a simple case of reduction unaccompanied by proviso or condition. The Legislative Appropriation Act, 1874 (18 Stat. L., p. 109, ch. 328), says simply "For rent of the portion (four floors) of the building occupied by the Department of Justice, fourteen thousand dollars,” and\ the succeeding appropriations are in, substantially, the same language. There is no provision that the amount appropriated shall be “ in full compensation” of the rent, analogous to the statutory provision in Fisher's Case (15 C. Cls. R., 323). Neither] is there any provision directing the Attorney-General “ to deliver i up the possession of saidpremises” at the expiration of the current! year, if the lessors should be unwilling to continue the lease at j a reduced rent, such as there was in Bradley's Case (13 C. Cls., R., 166; 98 U. S. R., 104). In a word, this is a naked case of an inadequate appropriation, as to which it has been again and again held that it affects no legal right. Collins’ Case (15 C. Cls. R., 22); Briggs' Case (ib., 48).
Secondly. This case bears, in principle, no resemblance to *30 that of Bradley (supra). There the lease upou which the action was brought was without precedent authority of Congress to procure a building; it was in terms made subject to an appropriation by Congress”; Congress disapproved or rejected it, and appropriated a less amount for the ensuing year as under an implied lease, and accompanied this with a specific direction to the Postmaster-General to vacate and restore possession of the premises to the lessors, if they were not willing to continue the holding at the reduced rent. Upon those facts both this court and the Supreme Court were divided in opinion upon the question whether Congress could exercise this power of rejection or disapproval at the time when they first essayed to exercise it; that is to say, whether Congress, after having approved the lease for two years of the term by making specific appropriations for the rent, could turn around and reject it for the third year of the term. A majority of both courts thought that the lease was subject all the way through its term to the annual appropriations of Congress; the minority thought that Congress was bound ab initio to ratify or reject, and that a ratification once given was an entirety which could not be renounced by a subsequent Congress; but the question in both courts was one of construction of the lease, and it was never supposed or intimated by either the majority or minority of the judges in either court that the rent could have been reduced if the lease had not been in terms subject to the appropriations of Congress.
The judgment of the court is that the claimants recover of the defendants the sum of $17,250.