**PACIFICORP CAPITAL, INC. and Datapoint Corporation, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**No. 452–87C.**

United States Claims Court.

June 30, 1992.

Michael E. Geltner, Washington, D.C., attorney of record for plaintiffs.

Richard E. Rice, Dept. of Justice, Washington, D.C., with whom were Director David M. Cohen and Asst. Atty. Gen. Stuart M. Gerson, attorneys of record for defendant.

## ORDER

HORN, Judge.

On April 16, 1992, the plaintiffs filed a "Motion for Rehearing· and Reconsideration" of the court's April 6, 1992 Opinion under Rule 59(a)(1) of the Rules of the United States Claims Court (RUSCC). In their April 16, 1992 motion, the plaintiffs specifically say: "In this motion, plaintiffs do not challenge the stated legal and factual conclusions on which the court's opinion is based." Rather, in that motion, the plaintiffs seek reconsideration and rehearing on that portion of the court's Opinion which, in the words of the plaintiffs, "denies plaintiffs damages for fiscal year 1986 lease charges under the Third Claim (Naval Supply Center, San Diego) on the basis of facts not considered in the opinion."[1]

---

1. As is more fully explained below, the court never denied this claim. In fact, the claim was not raised by the plaintiff and the Opinion issued by this court on April 6, 1992 never ad-

For the reasons discussed below, the plaintiffs' Motion for Rehearing and Reconsideration is, hereby, DENIED.

In their motion for reconsideration, the plaintiffs allege that certain facts regarding the Naval Supply Center, San Diego claim contained in, what the plaintiff characterizes as "undisputed documents," were not recognized in the court's Opinion. According to the plaintiffs, those documents establish that, "in addition to failing to renew the lease for fiscal year 1987 (which the court found not to be actionable), the defendant made no payments for lease or maintenance for fiscal year (FY) 1986, when the equipment in issue was admittedly in use." Therefore, in their motion for reconsideration, the plaintiffs maintain that, even under the court's analysis in the April 6, 1992 Opinion, the plaintiffs would be entitled to lease and maintenance payments allegedly due and owing under the delivery order at issue for the lease term prior to the Naval Supply Center's notice of nonrenewal.

The court's analysis of the plaintiffs' motion for reconsideration must begin with an examination of the plaintiffs' complaint, in this case the Second Amended Complaint. The section of the Second Amended Complaint which specifically addresses the San Diego Naval Supply Center claim states, in full:

10. (a) The Naval Supply Center, San Diego procured certain Datapoint equipment by rental under Contract No. N00244–86–M–DA77 for use at the Naval Training Center located in San Diego. The equipment was delivered and accepted by the government. In FY 1986 Datapoint did not offer this equipment on rental, but gave users the option of converting to a lease to ownership plan or returning the equipment. The government kept the equipment and continued to use it without issuing an order until May 9, 1986 when the Naval Supply Center, San Diego, issued a modification to the contract converting the equipment to Datapoint's FLTOP of the FY 1986 GSA schedule, retroactive to October, 1985.

(b) On or about July 31, 1986 the government notified Datapoint that the contract would not be renewed for fiscal year 1987. This action was not based on unavailability of funds, as funds were available for renewal, but, rather, on the government's desire to procure a different ADPE system to meet its ADPE needs.

(c) By refusing to renew the contract when appropriated funds were available for such purpose, the government breached the contract.

(d) On information and belief, the government entered into the contract although it was aware at the time of plans to replace the Datapoint equipment and intended only short term rental. The aforementioned action of the government was in breach of contract in that, pursuant to the contract terms the government expressly warranted to Datapoint that it had an intent to complete the lease and own the leased equipment.

(e) As a result of the government's breach of contract, plaintiffs have been damaged in the amount of $12,402.42.

(f) On or about September 26, 1986, Datapoint wrote to the contracting officer seeking to prevent non-renewal. The contracting officer responded on or about October 15, 1986, stating that the government's non-renewal of the contract was proper and permissible under the terms of the Datapoint FY 1986 schedule.

(g) On or about November 13, 1986, Datapoint filed a claim with the contracting officer pursuant to CDA seeking damages. More than 60 days have elapsed since the claim was filed, and the contracting officer has issued no decision. In view of the position taken by the contracting officer in the October 15, 1986 letter, as set out above, no purpose would be served by awaiting decision.

dressed the question of damages for fiscal year 1986 lease charges at the Naval Supply Center, San Diego.

(h) Plaintiffs seek damages in the amount of $12,402.42, together with interest from November 13, 1986 in accordance with CDA.

The Rules of the United States Claims Court require that: "A pleading which sets forth a claim for relief ... shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief," and "(3) a demand for judgment for the relief to which the pleader is entitled. Relief in the alternative or of several different types may be demanded." RUSCC 8(a)(2), (3). Furthermore, "[e]ach averment of a pleading shall be simple, concise, and direct." RUSCC 8(e)(1). The Supreme Court, in interpreting Rule 8(a) of the Federal Rules of Civil Procedure, which is substantially the same as RUSCC 8(a), stated "all the Rules [Rule 8(a)(2) ] require is 'a short and plain statement of the claim' that will give the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (emphasis added and footnote deleted).

The court noted in its April 6, 1992 Opinion that both in plaintiffs' motion for summary judgment and during oral argument, plaintiffs identified the Intent Clause, section 1.a.(1), of the FY 1986 FLTOP contract as at the center of their dispute. According to plaintiffs, the applicable Intent Clause means that a government agency breaches the contract when it enters into a FLTOP without the intent to complete the aggregate contract term and take ownership of the equipment.

In paragraph (c) of the Second Amended Complaint, the plaintiffs phrase their claim as follows: "[b]y refusing to renew the contract when appropriated funds were available for such purpose, the government breached the contract." In addition, subsections 10(d) and (e) of the Second Amended Complaint, regarding the Naval Supply Center, San Diego, state:

(d) On information and belief, the government entered into the contract although it was aware at the time of plans to replace the Datapoint equipment and

intended only short term rental. The aforementioned action of the government was in breach of contract in that, pursuant to the contract terms the government expressly warranted to Datapoint that it had an intent to complete the lease and own the leased equipment.

(e) As a result of the government's breach of contract, plaintiffs have been damaged in the amount of $12,402.42.

In the April 6, 1992 Opinion, the court specifically found that the defendant did not breach the governing contract with respect to the Navy Supply Center, San Diego.

Moreover, following a thorough analysis of the FY 1986 FLTOP contract, and after dismissing the plaintiffs' Intent Clause argument, the court commented, in footnote no. 9 of its April 6, 1992 Opinion, on the peculiarity of the plaintiffs' choice to base their claim on breach of contract, in light of the declaration of Stephen E. Markovich, an attorney for Datapoint. In Mr. Markovich's declaration, which is part of the record in this case, he states that at the conclusion of negotiations with GSA in the summer of 1985, he was, indeed, "aware that the language [of the FY 1986 FLTOP] no longer entitled Datapoint to claim that renewal was required in the absence of nonappropriation." Nevertheless, the plaintiffs still filed a Second Amended Complaint which reads: "[b]y refusing to renew the contract when appropriated funds were available for such purposes, the government breached the contract."

Nowhere in the plaintiffs' Second Amended Complaint, as quoted fully above, do the plaintiffs allege that the defendant failed to make any lease or maintenance payments for the period in FY 1986 prior to the July 31, 1986 nonrenewal notice for the San Diego Naval Supply Center. Yet, the plaintiffs now urge this claim for the first time in their Motion for Rehearing and Reconsideration under Rule 59(a)(1), RUSCC. The closest the plaintiff comes in the Second Amended Complaint to discussing the lease payment issue raised in the Motion for Rehearing and Reconsideration is the following statement: "The govern-

ment kept the equipment and continued to use it without issuing an order until May 9, 1986 when the Naval Supply Center, San Diego, issued a modification to the contract converting the equipment to Datapoint's FLTOP of the FY 1986 GSA schedule, retroactive to October, 1985."

In addition to the plaintiffs' failure to affirmatively assert equipment lease nonpayment in the Second Amended Complaint or in any proceedings before this court prior to the Motion for Rehearing and Reconsideration, the claim letter submitted by the plaintiffs to the contracting officer on November 13, 1986 also fails to allege that the defendant did not make any lease or maintenance payments prior to the Naval Supply Center's July 31, 1986 nonrenewal notice. The relevant portions of the plaintiffs' claim letter states:

In these FLTOP contracts, arising under Datapoint's FY 1986 GSA schedule, the government obliged itself to annually renew until ownership contingent upon availability of appropriated funds. This provision conforms to the Federal Anti-Deficiency Act, which is satisfied when the contract is annually renewable based on availability of appropriated funds. See *Leiter v. United States*, 271 U.S. 204 [46 S.Ct. 477, 70 L.Ed. 906] (1926); *[Bradley] v. United States*, 98 U.S. 104 [25 L.Ed. 105] (1878). In this case, we are advised that appropriated funds are available and that the non-renewal is based on the government's desire to replace the equipment with functionally similar equipment. In addition, it appears to us, based on the documents, that there was an intent not to renew when the contract was issued. Your October 15, 1986 letter does not address this. Accordingly, since the contracts are valid, the government is in breach of contract.

This claim seeks as damages all unpaid obligations to the end of the contract period. These are calculated as follows:
Total amount due . . . . . $12,402.42

According to the Contract Disputes Act, 41 U.S.C. § 605(a) (1988), "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. . . ." The plaintiffs' claim letter fails to challenge the government for nonpayment of any monies due under a purported lease.

This court rejects the plaintiffs' belated attempt in their Motion for Rehearing and Reconsideration to collect compensation for the San Diego Naval Supply Center's alleged failure to make lease payments. As noted above, Rule 8(a) of the Rules of the United States Claims Court, as interpreted by the United States Supreme Court, provides that a complaint must give a defendant "fair notice" of the contents and basis of a plaintiff's claim. Moreover, RUSCC 8(e)(2) specifically states that: "A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or separate counts or defenses." RUSCC 8(e)(2). Therefore, under the RUSCC, the plaintiffs certainly should have set forth the claim for unpaid lease payments at the time they filed the claim with the contracting officer as well as somewhere in the complaint filed with this court, in order to prevail on the issue.

In support of their Motion for Rehearing and Reconsideration, the plaintiffs rely on the self-serving affidavit of Kim Theoret, a "contract administrator at Pacificorp Capital, Inc." Ms. Theoret's affidavit was first submitted to the court in the appendix of a document styled "Plaintiffs' Opposition to Defendant's Cross–Motion for Summary Judgment and Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment." The court does not find the affidavit of Ms. Theoret persuasive.

In her affidavit, Ms. Theoret states that "[t]he information on which I base this affidavit is partially personal to me and partially based on company records which are kept in the ordinary course of business." In general terms, Ms. Theoret's brief affidavit addresses each of the six claims originally presented to the court in the plaintiffs' Second Amended Complaint. Ms. Theoret's statement in regard to the

one for the Naval Supply Center, San Diego claim states, in full:

> The Naval Supply Center, San Diego converted to FLTOP when it had no intention of completing the FLTOP to ownership of the equipment and failed to make any lease or maintenance payments under the FLTOP, even for fiscal year 1986, which preceded the non-renewal notice, for which year the total charges were $12,402.42. As a result, the damages attributable to this breach of contract are $19,185.12.

In addition to being a very general statement, upon close examination and comparison to other documents in the record, the Theoret affidavit is further undermined. Included in the appendix to the plaintiffs motion for summary judgment is a chart titled "Payment History," "Naval Supply Center 937 North Harbor Drive." The plaintiffs contend that the document is a breakdown of the invoices sent and received in relation to the San Diego Naval Supply Center contract. Simple multiplication of the amounts listed as due for each month, $799.38, shows that for fiscal year 1986, the total payments due for that year would not be $12,402.42 as Ms. Theoret alleges in her affidavit, and as the plaintiffs claim in both their Second Amended Complaint and their Motion for Rehearing and Reconsideration. Rather, even if the plaintiffs were due any money for lease payments for the twelve month fiscal year 1986 period, simple math would dictate a total due of only $9592.56, and not $12,402.42, as plaintiffs allege. Oddly enough, in the plaintiffs "Brief in Support of Motion for Summary Judgment," the plaintiffs come closer to the apparently accurate figure when they state, "[t]he Navy made no payments under the FLTOP, and the total unpaid lease charges were $19,185.12, $9592.00 of that amount attributable to fiscal year 1986."

Plaintiffs have been provided ample opportunities, before the contracting officer, and in previous submissions and appearances before this court, to urge a claim for any lease payments to which they claim entitlement for FY 1986 from the Naval Supply Center, San Diego. Both parties to these proceedings filed lengthy briefs and supporting documents and an extended oral argument on the summary judgment motions was held. The courts are already greatly overburdened in a far too litigious society. Allowing plaintiffs additional and multiple sorties into the courts, by entertaining the plaintiffs' Motion for Rehearing and Reconsideration, would not only be inefficient and uneconomical, but would condone the failure on the part of plaintiffs to process their claims properly. Moreover, to grant plaintiffs' Motion for Rehearing and Reconsideration also would provide encouragement to other litigants to act in like manner. Plaintiffs' Motion for Rehearing and Reconsideration under Rule 59(a)(1), RUSCC, is, hereby, DENIED.

IT IS SO ORDERED.