FARMERS' LOAN & TRUST CO. *v.* OREGON & C. RY. CO.     (No. 1,112.)

*(Circuit Court, D. Oregon.   August 3, 1885.)*

1. "SUBJECT" OF AN ACT AND "MATTER PROPERLY CONNECTED THEREWITH"—TWO-COUNTY MORTGAGE TAX LAW VOID.

   The clause in section 3 of the act of October 26, 1882, (Sess. Laws, 65,) commonly called "The Mortgage Tax Law," which declares that all mortgages or other obligations whereby land in more than one county "is made security for the payment of a debt shall be void," is a "matter properly connected" with the "subject" of the act, and therefore not in contravention of section 20 of article 4 of the constitution of the state; and a mortgage executed by the defendant to plaintiff, as trustee of its road and property in several counties in Oregon, to secure the payment of certain bonds of the same date, in violation thereof, is void and of no effect.

2. CONSTRUCTION OF STATUTE.

   A plain provision of a statute cannot be construed so as to exclude a particular case from its operation upon a surmise or conjecture, however probable, that the legislature did not actually contemplate, or consciously intend, its application thereto.

3. INSTALLMENT OF INTEREST, LIEN OF MORTGAGE MAY BE ENFORCED FOR.

   When a debt, payable at a future day, with interest payable in the mean time at stated intervals, is secured by mortgage, and default is made in the payment of an installment of such interest, a suit in equity may be maintained to enforce the lien of such mortgage, so far as such installment is concerned, by a sale of so much of the mortgaged property as may be necessary to pay the same; but if such property cannot be sold in parcels without injury to the parties, or one of them, then the court may order the whole of it sold, free from the lien of the mortgage, and apply the proceeds on the whole debt according to its then value.

Suit to Enforce Mortgage Liens.

*William B. Gilbert,* for plaintiff.

*Richard Williams* and *James K. Kelly,* for defendant.

DEADY, J.   This suit is brought by the Farmers' Loan & Trust Company, a corporation formed under the laws of New York, against the defendant, a corporation formed under the laws of Oregon, to enforce the lien of two certain mortgages on the property of the defendant, by a sale of the same, and to have the proceeds thereof applied on the several bonds secured thereby, according to their priority. The bill was filed on January 29, 1885, and states, among other things, that on June 1, 1881, the defendant executed and delivered to Henry Villard, Horace White, and Charles Edward Betherton, as trustees, a first mortgage on its property, consisting of about 306 miles of road, running through various counties in the Wallamet and Umpqua valleys, together with the rolling stock, land grants, telegraph lines, and everything pertaining thereto, with the franchise to operate the same, and the income and profits thereof, to secure the payment of certain bonds, with the interest thereon, about to be issued by the defendant, at the rate of not more than $20,000 per mile of its road, then and to be constructed, for the purpose of completing the same to the California line; that said trustees accepted said trust, but thereafter, and from time to time, changes were duly made in said trustees, so that on July 7, 1883, the plaintiff became and now is the sole trustee thereof;

that the defendant issued and disposed of, under said mortgage, and of even date therewith, 9,020 bonds for the sum of $1,000 each, amounting in all to $9,020,000, payable on July 1, 1921, with interest at the rate of 6 per centum per annum, payable half yearly, on January and July 1st of each year,—all of which bonds are still outstanding and unpaid; that in and by said mortgage it was, among other things, stipulated and provided as follows: (1) That the defendant will keep its road in good order and repair; (2) that if any interest coupon on any of said bonds shall remain unpaid, after due presentation, for six months, and such default shall not be waived, then the defendant will pay the principal of said bonds; (3) that in case the defendant does not keep its road in good order and repair, or makes default in the payment of any interest coupon for six months, said trustees may take possession of said road and operate the same; and if it is considered necessary to take legal proceedings to "foreclose" said mortgage, or to obtain possession of said "premises," they shall be entitled to a receiver, to be nominated by themselves.

The bill also states that on May 28, 1883, the defendant, having ascertained that the sum of $20,000 per mile would not be sufficient to complete its road, executed and delivered to the plaintiff, as trustee, a second mortgage upon all its property aforesaid, except so much of the land grant as pertained to the completed portions of the road, and subject only to the lien of the first mortgage aforesaid, to secure the payment of additional bonds, with the interest thereon, about to be issued by the defendant, at the rate of not more than $10,000 per mile of its road then and to be constructed, for the purpose of completing the same as aforesaid; that the plaintiff accepted said trust, and thereafter, on November 5, 1883, said second mortgage was duly recorded in the office of the county clerk of Multnomah county, and also in the several offices of the county clerks of the other counties in which said property is situate; that the defendant issued and disposed of, under said mortgage, 2,610 of said bonds, dated April 1, 1883, for the sum of $1,000 each, amounting in all to $2,610,000, payable on April 1, 1933, with interest at 7 per centum per annum, payable half yearly, on April and October 1 of each year,—all of which bonds are still outstanding and unpaid; that in and by said second mortgage it was stipulated and provided as in said first mortgage, as above stated.

The bill then alleged that the defendant "has failed to keep said road, rolling stock, equipment, and premises in good order and repair, as required by said mortgage," and has failed to pay the interest falling due on the bonds secured by the first mortgage on January 1, 1885, amounting to $275,000, and on the bonds secured by the second mortgage, on April 1, 1884, and all the interest accruing on either of said bonds since said respective dates; that the defendant is insolvent and wholly unable to pay its debts, and its property is "a very inadequate security" for the payment of the first mortgage

bonds; and that the premises cannot be sold in parcels without great injury to the interests of the beneficiaries in said trusts.

The defendant demurs to the bill, and for cause of demurrer shows: (1) That this suit is prematurely brought, because default in the payment of the coupons on the first mortgage bonds had not been made for six months prior to the filing of the bill herein. (2) The second mortgage is void, because made in violation of the provisions of section 3 of the act of October 20, 1882, commonly called the "Mortgage Tax Law," which provides: "All mortgages, deeds of trust, contracts, or other obligations hereafter executed, whereby land situated in more than one county in this state is made security for the payment of a debt, shall be void."

In answer to the demurrer to the second cause of suit counsel for the plaintiff maintains that the act of 1882, or this provision of it, is void, because in conflict with section 20 of article 4 of the constitution of the state, which declares: "Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title." The act in question is found at page 64 of the Session Laws for 1882. The subject of the act is the taxation of money loaned on real property, and, as a means to this end, it provides that it shall be assessed as land in the county where the land is situate; and because it would be, or was deemed to be, inconvenient to administer the act in cases where money is loaned on land in two or more counties, it provides that thereafter a mortgage on land in more than one county shall be void; and this purpose is expressly mentioned in the title.

This act has been before the supreme court of this state on two occasions, (*Mumford* v. *Sewall*, 11 Or. 67, S. C. 4 Pac. Rep. 585, and *Crawford* v. *Linn Co.* Id. 482, S. C. 5 Pac. Rep. 738,) and in its principal purpose and feature held valid. True, this particular clause has not been considered by the court, but if the legislature has the power to tax money loaned on land in the county where the land lies, and as land, about which there is neither doubt nor question, it certainly has the power to provide, as a means to that end, that a mortgage shall not include land in more than one county, and if it does, it shall be void. Abstractly considered, the legislature has plenary power over the subject, and may prohibit mortgages on land altogether, and even prohibit and make void all contracts for the payment of money at a future day. But an act for such or any other purpose must not embrace more than one subject, nor include matters having no necessary connection therewith. Cooley, Const. Lim. 142.

What are "matters properly connected" with the "subject" of an act is a question sometimes difficult to determine. But certainly a provision declaring two-county mortgages void is sufficiently relevant and germane to an act providing for the taxation of money secured by a mortgage on land, particularly when, as a means to that end, such act limits all mortgages on real property to land in one county.

This sanction is a necessary or, at least, a convenient means of securing obedience to the declaration that mortgages shall only include land in one county. And the former is as much a proper matter to be connected with the latter as the provision common in registry acts, that an elder deed, not recorded within the time thereby limited, shall be postponed to a junior one so recorded. The provision is valid; and, tried by it, this mortgage is surely void.

On the argument it was suggested that this class of mortgages is not within the mischief which the law was intended to remedy, and that the legislature could not have consciously intended and actually contemplated including them in its enactment. As a matter of fact this may be so, for it is not likely that the members of the legislature in the passage of this act were moved by any desire to shift the burden of taxation, in the case of a railway mortgage, from the shoulders of the debtor to those of the creditor, as they certainly were in the case of mortgages generally. But I know of no principle of law or rule of construction that authorizes a court to limit or set aside the plain language of an act upon any such surmise or conjecture, however probable. The act declares that "all mortgages, deeds of trust, contracts, or other obligations hereafter executed, whereby land situate in more than one county in this state is made security for the payment of a debt, *shall be void.*" The language of the provision is plain and unambiguous. It speaks for itself, and there is no room for construction. The legislature must be intended to mean what it has plainly said. In such a case the court is not at liberty to look elsewhere than the act for a possible, or even probable, legislative intention. Cooley, Const. Lim. 55.

At the following session of 1885 this act was amended (Sess. Laws, 9) so as to take railway mortgages thereafter executed out of the operation of this clause, which is equivalent to a legislative declaration that it theretofore included them. The mortgage is void, and no right can be asserted under it. The holders of the bonds mentioned therein are simply unsecured creditors of the defendant, without any lien on its property, and must rely on their bonds, and the remedy which the law gives them thereon, to enforce the collection of their demands.

The objection made by the demurrer to the suit on the first mortgage bond is in abatement thereof. The demurrer assumes that the suit is brought to enforce the lien of the mortgage, or foreclose it, as it is inaccurately termed, for the whole debt secured thereby; and as this cannot be done on account of a default in the payment of interest until the lapse of six months thereafter, the demurrer, upon this theory of the case, is well taken. But the plaintiff, in his bill, does not claim that any portion of the debt secured by the mortgage is due, except the installment of interest payable on January 1, 1885, amounting in all to $270,000. But it also appears from the bill that the property is an inadequate security for the payment of the first mortgage bonds,

and that the mortgaged property cannot be sold in parcels without great injury to the interests of the beneficiaries of the trust.

Where the interest on a debt secured by a mortgage is payable in yearly or half-yearly installments, and the principal at a future period, in the case of the non-payment of any such installment of interest, a suit may be maintained thereon, to so far enforce the lien of the mortgage; and if the sum due is not paid within a time limited by the decree of the court, sufficient of the property may be sold to pay the same. But if the property cannot be sold in parcels without injury to the parties, or one of them, the court may order the whole of it sold, free from the lien of the mortgage, and apply the proceeds on the whole debt, according to its then value. *Brinckerhoff* v. *Thallhimer*, 2 Johns. Ch. 486; *Meyer* v. *Graeber*, 19 Kan. 165; *Morgenstern* v. *Klees*, 30 Ill. 422; *Chicago, etc., R. Co.* v. *Fosdick*, 106 U. S. 67; S. C. 1 Sup. Ct. Rep. 10; *Credit Co.* v. *Arkansas, etc., R. Co.* 15 Fed. Rep. 52; Jones, Mortg. §§ 1181, 1459, 1478. This rule of law is recognized by the Oregon Code of Civil Procedure concerning the enforcement or foreclosure of the lien of a mortgage. Section 417 provides:

"When a suit is commenced to foreclose a lien, by which a debt is secured, which debt is payable in installments either of interest or principal, and any of such installments is not then due, the court shall decree a foreclosure of the lien, and may also decree a sale of the property for the satisfaction of the whole of such debt, or so much thereof as may be necessary to satisfy the installment then due, with costs of suit; and in the latter case the decree of foreclosure as to the remainder of the property may be enforced by an order of sale, in whole or in part, whenever default shall be made in the payment of, the installments not then due."

And a court of equity, without any such statutory provision, will retain jurisdiction of the case, and work out the same result. In fact, this and similar statutory provisions in other states is merely an affirmance or crystallization of a prior equity practice or procedure. This mortgage was made to secure the payment of the interest coupons, as well as the bonds to which they are attached. Each of such coupons is an installment of the debt secured by the mortgage, and judgment might be obtained thereon for the amount in an action at law; and the right to maintain a suit in equity to enforce the lien of the mortgage, as to such coupon, as soon as it becomes due, is equally clear. Of course, in this suit the allegation in the bill that the defendant has failed to keep the property in "good order and repair" is altogether immaterial. The remedy for such default is not a sale of the property, but to take or obtain possession of·it, and put it in repair. Besides, if the matter was material, such a general and indefinite allegation of failure to keep the covenant concerning repairs would avail nothing.

The demurrer to the first cause of suit stated in the bill, and to so much thereof as relates to it, is overruled, and to the second one it is sustained.